IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS A. MILLER,<br><br>Defendant. | No. C04-2002; CR02-2026<br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the court pursuant to movant Nicholas A. Miller's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (docket number 204). Briefs on the merits of this matter have been submitted. This matter was referred to the undersigned United States Magistrate Judge for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned recommends that the application for writ of habeas corpus be denied and this matter be dismissed.

## I.  PROCEDURAL HISTORY

Movant Nicholas A. Miller and two other individuals, Robert H. Cleveland and Shawn L. Drinnon, were charged with a federal crime in an indictment returned August 21, 2002, in the Northern District of Iowa. The indictment charged all three defendants with knowingly and intentionally combining, conspiring, confederating, and agreeing with other persons to (1) manufacture 100 grams or more of methamphetamine and 1000 grams or more of a mixture or substance containing a detectable amount of methamphetamine; and (2) distribute 1000 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846.

1

On January 3, 2003, Mr. Miller gave notice of his intent to plead guilty to Count 1 of the indictment, pursuant to a plea agreement. On the same day, this court entered a Report and Recommendation that Mr. Miller's guilty plea be accepted. The plea was accepted by the United States District Court for the Northern District of Iowa on January 7, 2003. The plea agreement contained numerous stipulations, including: (1) that "[t]he defendant understands that [his] offenses are punishable by the following penalties: a minimum of 20 years up to life imprisonment without the possibility of parole, a fine of up to $4,000,000, a mandatory special assessment of $100, and a term of supervised release of up to 10 years"; (2) that "[t]he parties stipulate and agree that . . . because defendant is a career offender . . . [p]ursuant to U.S.S.G. § 4B1.1(A), [the defendant's] based level is 37, [u]nder U.S.S.G. § 2D1.1, the otherwise applicable offense level should be calculated by starting with a minimum base offense level of 32"; (3) that "[a]s of the date of this agreement, the defendant appears to qualify for a three-level downward adjustment for acceptance of responsibility based upon his willingness to enter a guilty plea"; (4) that "[t]he United States may, but shall not be required to, make a motion pursuant to § 5K1.1 of the United States Sentencing Guidelines requesting the court to depart below the sentencing range called for by the sentencing guidelines in the event defendant provides 'substantial assistance'"; (5) that "[t]he United States may, but shall not be required to, make a motion pursuant to 18 U.S.C. § 3553(e) allowing the court to depart below the minimum sentence required by statute for any offense to which the defendant has agreed to plead guilty in the event the defendant provides 'substantial assistance'"; and (6) that [t]he defendant agrees that his attorney has represented him in a competent manner and has no complaints about that lawyer's representation." In addition, the parties agreed that the defendant had several criminal convictions including (1) an April 8, 1991, conviction of possession with intent to deliver methamphetamine and marijuana and possession of cocaine; and (2) a March 27, 1996, conviction of possession

of methamphetamine with intent to deliver methamphetamine, possession of marijuana, and interference with official acts.

Mr. Miller was sentenced on June 4, 2003. Pursuant to the plea agreement, the determination of Mr. Miller's sentence began with a base offense level of 37 because Mr. Miller qualified as a career offender pursuant to U.S.S.G. § 4B1.1. Mr. Miller was given a three level decrease for acceptance of responsibility, for an adjusted offense level of 34. Under the Sentencing Guidelines, the adjusted offense level of 34, combined with Mr. Miller's criminal history category of VI, provided a sentencing range of 262 to 327 months. The court granted the United States's motion for departure from the sentencing guidelines for substantial assistance, pursuant to U.S.S.G. § 5K1.1, and motion for departure from the mandatory statutory minimum, pursuant to 18 U.S.C. § 3553(e). Mr. Miller was sentenced to 228 months of incarceration followed by 10 years of supervised release.

Mr. Miller filed a 28 U.S.C. § 2255 motion, pro se, on December 16, 2003. Mr. Miller raises three arguments challenging his conviction and sentence. Specifically, Mr. Miller asserts: (1) a denial of effective assistance of counsel because counsel did not fully inform Mr. Miller what his sentence could be; (2) a conviction obtained by a faulty indictment because his indictment should reflect the <u>Apprendi</u> rule; and (3) a sentence enhanced by faulty means because the probation office incorrectly determined that his offense triggered a mandatory minimum.

The government resisted Mr. Miller's section 2255 motion on March 7, 2005. In its resistance, the government asserts that: (1) Mr. Miller was fully informed of the maximum penalty accompanying his offense; (2) counsel was not ineffective because Mr. Miller was informed as to the penalty that would result from his guilty plea; and (3) assuming Mr. Miller's counsel was ineffective in failing to inform the defendant of his possible penalty, the error had no prejudicial effect.

## II. CONCLUSIONS OF LAW

### A. Standard Under 28 U.S.C. § 2255

Title 28 U.S.C. § 2255 states in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Section 2255 is the statutory analogue of habeas corpus for persons in federal custody. Poor Thunder v. United States, 810 F.2d 817, 821 (8th Cir. 1987). "Like habeas itself, Section 2255 is not the equivalent of a direct appeal. There are many claims of error sufficiently grave and prejudicial to cause a reversal of conviction on direct appeal, but yet not fundamental enough to support a collateral attack" under section 2255. Id. at 821. Consequently, relief under section 2255 is reserved solely for "transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if [left] uncorrected, would result in a complete miscarriage of justice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citing Poor Thunder, 810 F.2d at 821).

Ordinarily, the failure of a section 2255 movant to raise an issue on direct appeal acts to procedurally bar him or her from raising that issue for the first time in a motion pursuant to section 2255.[1] Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997). More specifically, as a result of a section 2255 movant's failure to raise an issue on appeal,

---

[1] The rule of procedural default applies with equal force to an adjudication of guilt based on a defendant's plea of guilty as it does to a court or jury conviction. See Reid v. United States, 976 F.2d 446, 448 (8th Cir. 1992) (applying the rule of procedural default after the defendant's knowing and voluntary plea of guilty).

the Circuit Court "cannot review his claims on their merits unless [the movant] is able to demonstrate either [1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall v. Benson, 114 F.3d 754, 758 (8th Cir. 1997) (citing Cole v. Thompson, 501 U.S. 722, 750 (1991)). The requirement of cause and prejudice means that a section 2255 movant "may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error." Apfel, 97 F.3d at 1076 (citing United States v. Frady, 456 U.S. 152, 167–68 (1982)). The "fundamental miscarriage of justice" exception to procedural default is "only available to a [movant] who demonstrates 'that a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" McCall, 114 F.3d at 758. The rule of procedural default recognizes that the significant interest of finality in criminal cases retains strength only if the direct appeal remains the exclusive route for complaining of errors that demonstrate neither "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." Id. at 821–22 (citing Johnson v. United States, 805 F.2d 1284, 1287 (7th Cir. 1986) (quoting Hill v. United States, 368 U.S. 424, 428 (1962))).

Once a court has decided the merits of all of the movant's claims which are properly before it, and has further determined whether the remaining claims may be excused from procedural default based on cause and prejudice, the court may analyze whether based upon a claim of actual innocence under the fundamental miscarriage of justice exception, the movant can avoid procedural default. See Dretke v. Haley, 541 U.S. 386 (2004). The actual innocence exception to procedural default "applies only when a [movant] shows by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found the petitioner guilty." Anderson v. United States, 25 F.3d 704, 706–07 (8th Cir. 1994). Furthermore, "[t]he exception only applies to claims of factual innocence as opposed to legal innocence." Id. at 707. Specifically, a movant claiming

actual innocence must show: (1) that his allegations of constitutional error are supported by new reliable evidence that was not presented at trial; and (2) that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. Weeks v. Bowersox, 119 F.3d 1342, 1351 (8th Cir. 1997). The fundamental miscarriage of justice exception is to remain rare and only be applied in the extraordinary case, reserved solely for those who are "truly deserving." Id. at 1351 (citing Schlup v. Delo, 513 U.S. 298, 321–22 (1995)). Accordingly, the actual innocence exception mandates "review of procedurally barred, abusive, or successive claims only in the narrowest type of case—when a fundamental miscarriage of justice would otherwise result." Id. (citing Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996)).

### B.  Standard Regarding Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Strickland, 466 U.S. at 684.

> [T]he right to effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart, 506 U.S. at 364 (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)).

Absent unusual circumstances, a section 2255 movant's demonstration of ineffective assistance of counsel satisfies the cause and prejudice standard of procedural default. Apfel, 97 F.3d at 1076. However, in order to successfully demonstrate ineffective assistance of counsel within the context of section 2255, the movant faces a heavy burden. See id. at 1076. In the context of a motion under section 2255, a claim of ineffective assistance of counsel is to be analyzed under the two-part test set forth in Strickland v. Washington. The United States Supreme Court reformulated the Strickland test for constitutionally ineffective assistance of counsel in Lockhart v. Fretwell. The Eighth Circuit's application of this test states:

> Counsel is constitutionally ineffective under Fretwell when: (1) counsel's representation falls below an objective standard of reasonableness; and (2) the errors are so prejudicial that the adversarial balance between defense and prosecution is upset, and the verdict is rendered suspect.

English v. United States, 998 F.2d 609, 613 (8th Cir. 1993) (citing Lockhart, 506 U.S. at 369–70). Review of trial counsel's performance is deferential and the presumption is that trial counsel was competent and effective. Strickland, 466 U.S. at 689; Smith v. Lockhart, 921 F.2d 154, 156 (8th Cir. 1990). Reasonable trial strategy cannot rise to the level of ineffective assistance of counsel. Id. (citing Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986)). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," Strickland, 466 U.S. at 690, even if those strategic decisions prove unwise. Wing v. Sargent, 940 F.2d 379, 381 (8th Cir. 1988), cert. denied, 489 U.S. 1088 (1989). Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Strickland, 466 U.S. at 693.

If a section 2255 movant fails to demonstrate ineffective assistance of counsel as cause for the procedural default and prejudice attributable thereto, he or she may not obtain review of the defaulted claim. See Wainright v. Sykes, 433 U.S. 72 (1977). In the context of ineffective assistance of counsel, "cause" for procedural default must ordinarily be demonstrated by showing that some objective factor external to the defense impeded counsel's efforts to comply with the applicable procedural rule or standard of conduct. See Smith, 882 F.2d at 333 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "When counsel's conduct has impeded the [movant's] effort to bring a claim," such ineffective assistance of counsel constitutes "cause" for purposes of avoiding procedural default. See id.

In addition to establishing "cause," a section 2255 movant must "shoulder the burden of showing, not merely that errors at his trial created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with

7

error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982). Where conduct has not prejudiced the movant, the court need not address the reasonableness of that conduct. Id. at 691; United States v. Williams, 994 F.2d 1287, 1291 (8th Cir. 1993). To determine whether there is prejudice, the court examines whether the result has been rendered "unreliable or fundamentally unfair" as a result of counsel's performance. Lockhart, 506 U.S. at 364; West v. United States, 994 F.2d 510, 513 (8th Cir. 1993). Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. Lockhart, 506 U.S. at 372, quoted in West, 994 F.2d at 513. Prejudice does not exist unless "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, quoted in Williams, 994 F.2d at 1291.

### C. Mr. Young's Claims for Relief Pursuant to 28 U.S.C. § 2255

#### 1. Ineffective Assistance of Counsel

The success of all three of Mr. Miller's arguments depends upon the success of his ineffective assistance of counsel argument. Because Mr. Miller did not raise any argument on appeal, his claims are procedurally barred unless he can demonstrate either "[1] cause for his default and actual prejudice, or [2] that the failure to consider his claims would result in a fundamental miscarriage of justice." McCall, 114 F.3d at 758. However, a successful ineffective assistance of counsel claim negates the procedural bar and would allow Mr. Miller's remaining arguments to go forward.

Mr. Miller argues that his counsel was ineffective because counsel did not inform him of what his resulting sentence could be. There is no support for this assertion. Mr. Miller's plea agreement expressly stated that his offense was subject to a mandatory minimum of 20 years of incarceration with the possibility of life imprisonment. Mr. Miller placed his initials next to this paragraph of the agreement, signifying he had read and understood what it contained. Mr. Miller also initialed a paragraph which stated

that the judge had complete discretion in the sentence imposed and conversations between the United States and Mr. Miller were not a guarantee as to the actual sentence imposed. Furthermore, Mr. Miller initialed a paragraph concerning how his sentence would be calculated under the United States Sentencing Guidelines.

In addition, this court's Report and Recommendation concerning Mr. Miller's guilty plea noted that it "advised the defendant of the consequences of his plea, including the maximum fine, the maximum term of imprisonment, the minimum term of imprisonment, and the possibility that restitution could be ordered." Mr. Miller was advised as to how the United States Sentencing Guidelines might apply in his case. Mr. Miller acknowledged that he understood that the sentence imposed might be different from what his attorney had estimated.

Finally, Mr. Miller twice acknowledged that he was satisfied with his counsel in connection with his plea. In his signed plea agreement, Mr. Miller initialed the paragraph that stated that he agreed that his attorney had represented him competently and indicated that he had no complaint about counsel's representation. Moreover, Mr. Miller indicated to the court at his plea hearing that he had fully conferred with counsel concerning his plea agreement and that he was fully satisfied with his counsel.

Because Mr. Miller knew of the statutory maximum and mandatory minimum for his offense and testified that he was satisfied with his counsel, he cannot show that prejudice resulted from his alleged ineffective counsel. Mr. Miller's possible sentence was greatly reduced due to his cooperation. Mr. Miller's crime carried a mandatory minimum of 20 years imprisonment. Pursuant to 18 U.S.C. § 851, his minimum sentence was based on his prior conviction for a felony drug offense. The United States chose to file only one section 851 notice when, based on Mr. Miller's prior criminal history agreed to by both parties in his plea agreement, he could have been subject to two section 851 notices. If the United States had filed both section 851 notices, Mr. Miller's mandatory minimum sentence would have been life imprisonment without parole. In addition, Mr. Miller's

adjusted offense level was 34 (after a three level decrease based on his acceptance of responsibility). His Guideline Sentencing range was 262 to 327 months. Mr. Miller was granted departures based on his substantial assistance to the United States. The sentence imposed was 228 months, below the statutory mandatory minimum of 240 months and below the lowest sentence the Guidelines range provides.

Mr. Miller cannot show cause or prejudice based on his alleged ineffective assistance of counsel. Thus, his claim is without merit. Because Mr. Miller's ineffective assistance of counsel claim fails, his remaining two claims cannot succeed as he did not bring them on direct appeal. However, his remaining claims will be discussed briefly as they too are without merit.

## 2. Faulty Indictment

Mr. Miller claims that his conviction was obtained by a faulty indictment. He asserts that because his indictment did not specify the exact weight of methamphetamine he was charged with manufacturing and distributing, he should not have been found responsible for the quantity calculated for sentencing. In Apprendi, the United States Supreme Court found that it was a violation of the Sixth Amendment right to a jury trial for a state court to increase a criminal defendant's sentence beyond the statutory minimum by a fact not found by a jury. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The Court extended this protection to guilty pleas in state court in Blakely v. Washington, holding that it was also unconstitutional to increase a defendant's sentence beyond the statutory minimum by a fact not admitted to in his guilty plea. Blakely v. Washington, 542 U.S. 296 (2004). Finally, the Supreme Court extended its holdings in Apprendi and Blakely to the United States Sentencing Guidelines in United States v. Booker, 125 S. Ct. 738 (2005).

The Court held that its Booker holding only applied retroactively to "all cases on direct review." Id. at 769. The Court makes no mention of cases on collateral review. Mr. Miller was sentenced on June 4, 2003. Mr. Miller made no direct appeal and,

10

therefore, the disposition of his case was final as of June 4, 2003. Thus, Mr. Miller is not entitled to any relief under Booker. The law at the time of Mr. Miller's sentencing allowed a judge to find facts not found by a jury or stipulated to by a defendant in his plea agreement, for the purposes of enhancements or departures within the federal sentencing guidelines. Thus, Mr. Miller's claim lacks merit.

### 3. Sentence Enhanced by Faulty Means

Mr. Miller contends that his sentence was enhanced by faulty means because the probation office wrongly found that his offense had a mandatory minimum sentence. In his plea agreement, Mr. Miller pled guilty to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846. On December 18, 2002, the United States gave notice of its intention to seek enhanced penalties under 21 U.S.C. § 851 because of Mr. Miller's prior felony drug conviction. Title 21 U.S.C. § 841 provides that "[i]f any person commits such a violation after prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment. . . ." It is clear that the crime to which Mr. Miller pled guilty carries with it a mandatory minimum sentence of 20 years. Moreover, as stated above, Mr. Miller could have been subject to a greater enhancement if the United States had chosen to give notice of the second felony drug conviction that Mr. Miller stipulated to in his plea agreement. Title 21 U.S.C. § 841 further provides that "if any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release." Mr. Miller's offense clearly supplies a statutory mandatory minimum and his sentence was lower than the mandatory minimum. Thus, Mr. Miller's final claim is without merit.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections to the Report and Recommendation within ten (10) days of the date of this

Report and Recommendation, that the movant's motion for relief under 28 U.S.C. § 2255 be denied.[2]

February 23, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[2] Any party who objects to this Report and Recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to the Report and Recommendation must arrange promptly for a transcription of all portions of the record that the district court judge will need to rule on the objections.